Transcript of Sentencing
December 21, 2016

1          UNITED STATES DISTRICT COURT FOR THE

2             WESTERN DISTRICT OF OKLAHOMA

3

4

   UNITED STATES OF AMERICA,        )
5                                    )
        Plaintiff,                   )
6                                    )
                  -vs-               )  Case No.  CR-14-306-M
7                                    )
   MICHAEL DEAN BILLINGS,            )
8                                    )
        Defendant.                   )
9                                    )

10

11

12       PARTIALLY SEALED TRANSCRIPT OF SENTENCING

13        BEFORE THE HONORABLE VICKI MILES-LaGRANGE

14       WEDNESDAY, DECEMBER 21, 2016; 10:00 A.M.

15             OKLAHOMA CITY, OKLAHOMA

16

17

   For the United States:
18      David P. Petermann
        Assistant U.S. Attorney
19      201 West Park Avenue
        Suite 400
20      Oklahoma City, Oklahoma 73102

21 For the Defendant:
        Daniel L. White
22      Attorney at Law
        Post Office Box 94551
23      Oklahoma City, Oklahoma 73143

24

        Proceedings recorded by mechanical stenography, transcript
25 produced by computer.

Transcript of Sentencing
December 21, 2016

1          (Proceedings had on December 21, 2016.)

2              THE COURT:  Good morning, ladies and gentlemen.

3    This is CR-14-306-M, United States of America vs. Michael Dean

4    Billings.

5          Would counsel please make your appearances for the

6    record?

7              MR. PETERMANN:  Good morning, Your Honor.  David

8    Petermann on behalf of the United States.

9              THE COURT:  Good morning, Mr. Petermann.

10             MR. WHITE:  Good morning, Judge.  Daniel White for

11   Mr. Billings.

12             THE COURT:  Good morning, Mr. White and

13   Mr. Billings.

14         Mr. White and Mr. Billings, would you-all come on up to

15   the podium, please?

16         When you're speaking, Mr. Billings, if you would hold the

17   mic, so that -- otherwise, you can leave it sitting there if

18   you're not speaking.

19             THE DEFENDANT:  Be glad to.  Thank you.

20             THE COURT:  I believe I've already stated that this

21   is the case, United States of America vs. Michael Dean

22   Billings, CR-14-306-M.

23         Are you Michael Dean Billings?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  And, Mr. Billings, could I ask you to

Transcript of Sentencing
December 21, 2016

1    take an oath to tell the truth, please?

2               THE DEFENDANT:  Certainly.

3          (Defendant duly sworn.)

4               THE COURT:  Mr. Billings, how old are you, sir?

5               THE DEFENDANT:  I'm 61.

6               THE COURT:  And are you present with your attorney

7    this morning, Mr. Danny White?

8               THE DEFENDANT:  Yes, Your Honor, I am.

9               THE COURT:  Have you and Mr. White had an

10   opportunity to read and discuss and talk about the presentence

11   and investigation report that has been submitted in this case?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  The Court is advised, from its own

14   review of the presentence and investigation report, Mr. White,

15   that there are a number -- they're not numbered

16   chronologically.  There are a number of objections to the

17   presentence report.

18        Could you advise the Court -- and I believe I'm aware,

19   but I just wanted to make sure.  Would you advise the Court

20   which of these objections do you still push forward on?

21              MR. WHITE:  Judge, we would continue in our

22   objection to paragraph 83.  The Government was correct in its

23   sentencing memorandum where it stated that we were withdrawing

24   our other objections.  And I did not address that in mine,

25   but, yes, we are just maintaining our objection to paragraph

Transcript of Sentencing
December 21, 2016

1  83.

2        THE COURT:  Very well.

3      Why don't then I allow you to speak first on your

4  objection to paragraph 33 [sic].  The Court certainly has read

5  all of this.  Then I'll hear from Mr. Petermann, and then I'll

6  give you the last word.

7        MR. WHITE:  Yes, ma'am.

8      Judge, as the Court is aware, paragraph 83 deals with a

9  United States Sentencing Guideline enhancement in Chapter 4,

10  specifically Paragraph 4B1.5(b)(1).

11      And our objection is that, under a plain reading of the

12  section in the subparagraph and application notes, along with

13  the statutory reference, this does not apply.

14      I have no case law to support that.  And as the

15  Government points out, the Tenth Circuit hasn't addressed

16  that.  However, I think -- as I said in my addendum and my

17  supplement, I don't think there's any ambiguity that needs

18  interpretation.

19      If you walk through -- well, if you start with Chapter 4,

20  with the premise that that deals with criminal history and all

21  the other provisions in there deal with criminal convictions,

22  it's my position -- or our position that what is trying to be

23  accomplished here, that being a 5-point enhancement for a

24  repeated pattern of sexual activity, should more

25  appropriately -- and has been addressed in Chapter 2

Transcript of Sentencing
December 21, 2016

1   enhancements under the specific offense characteristics.

2        And when you walk through, as I have done in my

3   objections and in my addendum, what it requires to show the

4   covered sex offense is statutorily -- per that definition,

5   there has to be a conviction for a prior sexual offense.

6        And that's why I'm saying there's no ambiguity about it,

7   because it's very clear that that is what is required.

8        The other conduct that is alleged in the PSR that we're

9   not objecting to is relevant conduct, and that has already

10  been added in.

11       And that would be our position, Judge, that the 5 points

12  do not apply, which would put Mr. Billings at a total

13  guideline -- total offense level of 30, criminal history

14  category I.

15            THE COURT:  Very well.  Thank you, Mr. White.

16       If you'll give the podium to --

17            MR. WHITE:  Do you want Mr. Billings to drive back

18  over here?

19            THE COURT:  No.  Let him just stay there if that's

20  okay with Mr. Petermann.

21            MR. PETERMANN:  Your Honor, the application that we

22  are discussing here is 4B1.5.

23       The caption of that application is "Repeat and Dangerous

24  Sex Offender Against Minors."

25       It is the position of the United States Probation

Transcript of Sentencing
December 21, 2016

1    Department that it applies in this case.  It is being

2    advocated by the United States Government.  The guideline

3    range should be as it appears in the presentence report, 168

4    months to 210 months.

5         Mr. White is confused.  There are two ways in which one

6    can be classified as a repeat and dangerous sex offender under

7    the guidelines.

8         The first is where he is confused.  It's Subsection A,

9    which simply does not apply here.  We are not advocating for

10   application of Subsection A.

11        Subsection A says, if you have been convicted, the

12   instant offense is a covered sex offense, which this one is,

13   and you have a previous conviction for a sex offense, then the

14   enhancement can apply.  That's Subsection A.

15        Subsection B plainly reads, in any case where the

16   Defendant's instant offense is a covered sex crime -- and even

17   the defendant admits this is a covered sex crime in his own

18   memorandum --"then Subsection A doesn't apply."

19        This is the only subsection that says there must be a

20   previous sex offense conviction.

21        Subsection B applies if you have a covered offense, which

22   we do, and there is a pattern of activity involving prohibited

23   sexual conduct.

24        That's the repeat element for Subsection B, not a

25   previous conviction.  This is not even a close call.  This is

1   an easy decision for the Court because it's supported by fact

2   and law.

3       Both the Seventh and the Eighth Circuit have said when

4   Subsection B is being applied or considered, which is what's

5   happening here, there is no requirement for a previous

6   conviction because Subsection B simply requires a pattern of

7   conduct of sexually prohibited offenses.

8       We have that here.  The PSR is replete, and the defendant

9   is not objecting to that.

10      There are three victims here:  E.R., a sixteen-year-old

11  at the time; Twin No. 1, a sixteen-year-old at the time; Twin

12  No. 2, a sixteen-year-old at the time.

13      Multiple occurrences of the defendant with these three

14  victims.  That is a pattern of activity of prohibited sexual

15  offense.  It could not be more clear.

16      We pointed out, as we are required to with our candor to

17  the Court -- the Tenth Circuit hasn't spoken on it, but this

18  Court's been on the bench long enough to know that the Tenth

19  Circuit doesn't speak on a lot of things.  It doesn't mean

20  that it's not supported in fact by law.

21      There's law to show that it's applied this way.  The

22  facts show, the very plain reading of this shows.  And,

23  respectfully, Mr. White, in his zeal, has misread the

24  application.

25      Even the application note of the guides says, an offense

1    described in 2426(b) is a prohibited sexual conduct.

2        What he's been charged with here is traveling in foreign

3    commerce with the intent to have sex with minors.  It's

4    covered.

5        For all these reasons, this plus-5 enhancement should

6    apply and the guidelines should be, as they are in the PSR,

7    168 months to 210 months.

8            THE COURT:  Thank you.

9        Anything further, Mr. White?

10           MR. WHITE:  Judge, Application 4(B)(i), in general,

11   for purposes of Subsection B, which is the enhancement that is

12   attempting to be used here, the defendant engaged in a pattern

13   of activity involving prohibited sexual conduct.  And it goes

14   on to describe that.

15       Application of Subsection B, definition, big A, for

16   purposes of Subsection B, prohibited sexual conduct means any

17   of the following:  Any offense described in 18 U.S. Code

18   2426(b)1(A) or (B).

19       And I agree with the Government.  However, I think where

20   we disagree is, 2426(b)1(A) and (B) says, the term prior sex

21   offense conviction means a conviction for an offense.

22       That is, to me, very, very clear.  Obviously, there's a

23   difference of opinion, and I would ask the Court to just read

24   the plain language of the statute.  And that would be our

25   position, Judge.

Transcript of Sentencing
December 21, 2016

1          THE COURT:  Very well.  Thank you.

2      The Court would find that, based upon all of the

3  submissions related to this issue in responding to and

4  objecting to the paragraph 83 of the presentence and

5  investigation report, the Court would certainly first note

6  that the application of 4B1.5 –– the Court finds that it is an

7  erroneous conclusion that the section requires a conviction.

8      The Court would find that this covered sex crime is

9  not –– first, let me say this, that the application of the

10  5-level enhancement on that section of the guideline, it

11  requires only the offense that is described and not a

12  conviction for that offense.

13      And like –– I believe it was you, Mr. White, that said

14  the Tenth Circuit apparently has not litigated this particular

15  issue, or it may have been Mr. Petermann.  Other circuits

16  have.

17      And what those circuits concluded was that, although

18  Subsection A only applies where there's a prior sex

19  conviction, Subsection B applies when a defendant has no prior

20  sex conviction.

21      And they cited –– I believe it was Mr. Petermann that

22  mentioned the Eighth Circuit case.  And I believe there was a

23  Seventh Circuit case as well.

24      The Court would find that the paragraph is correct as

25  written, and the objection submitted for the Court's

Transcript of Sentencing
December 21, 2016

1   resolution -- and the resolution is that Subsection B applies

2   in this matter.

3        Are there any other objections?  I believe there are not.

4   I'm just asking for the record.

5             MR. WHITE:  Yes, ma'am.

6             THE COURT:  Mr. White, with that ruling, it makes

7   the guideline provisions apply, with the ruling that the Court

8   just made, 180 months to 210 months.

9        Do you concur?  Is that correct?

10            MR. WHITE:  I believe it's 168 to 210, Judge.

11            MR. PETERMANN:  Your Honor, I believe it should be

12  168 to 210.

13            THE COURT:  Okay.  That's what I just said.

14            MR. WHITE:  I thought you said 180.

15            THE COURT:  Oh, I'm sorry.  168 to 210 is what I

16  intended.

17       Both parties agree?

18            MR. PETERMANN:  Yes, Your Honor.

19            THE COURT:  Very well.

20       With that, is there any reason why -- and I'll ask you

21  first, Mr. White, because you're standing there.  Is there any

22  reason why we should not proceed to any arguments or

23  statements you wanted to make on his behalf prior to

24  sentencing him?

25            MR. WHITE:  No, ma'am.  I think that resolves all

1    the legal issues.

2              THE COURT:  Very well.

3         Do you want to make a brief closing statement?  Then

4    we'll hear from Mr. Petermann.

5              MR. WHITE:  Yes, ma'am.

6              THE COURT:  And I'll give you the last word.

7              MR. WHITE:  Okay, Judge.

8         Judge, I'm going to follow along with the sentencing

9    memorandum I filed in this case and craft my argument within

10   the constraints of Title 18 Section 3553, which, as the Court

11   is aware, is kind of the guideline for crafting a sentence.

12        And, obviously, we are asking for a sentence of 4 years,

13   which is significantly less than what the Court has found the

14   final guidelines to be.

15        I think, given -- if we would have gotten the 5-level

16   decrease, that would have been less of a variance, but we're

17   still asking for a variance of down to 4 years, Judge.

18        And I think the sentencing memorandum I filed, along with

19   the sentencing memorandum the Government filed, fully

20   justifies that request, although it is a significant variance.

21        As I've stated in there, the first thing the Court

22   considers is the nature and circumstances of the offense and

23   the history of the defendant and the characteristics of

24   Mr. Billings.

25        We've talked a lot about the nature and circumstances of

1   the offense.  And I think everyone is familiar with those.

2   And as I said in my memorandum, the Court has gotten kind of

3   one side of Mr. Billings.

4       Mr. Billings has got a lot of support.  You can see how

5   many people he's got here today.  That's in addition to the

6   people I listed; his dad in Sulphur, who is aged; his three

7   sisters in Sulphur, and his family.

8       Mr. Billings has had a long career.  As the Court's

9   aware, he used to be a lawyer.  As I pointed out, I think,

10  November 10th of last year is when he submitted his

11  resignation to the Bar association, two days prior to his

12  change of plea.

13      He's had some bumps along the way, but he's not a

14  throwaway, Judge.

15      The second factor is the need for the sentence imposed.

16  And I don't want to offend anyone.  And he is fully accepting

17  responsibility for what he did, but, as I put in the

18  sentencing memorandum, Judge, if he did what he pled guilty to

19  in Oklahoma, he would not be -- he would not be subject to

20  criminal prosecution.

21      It's -- I don't know if you want to call it a fluke of

22  the law, but under Federal law, if you travel to an

23  international country to engage in sex with people under 18,

24  that's a violation of Federal law.

25      If he were to engage in sex with a person 16 years old in

1    Oklahoma, that's not illegal.

2         So, again, while he has stepped up and accepted

3    responsibility for what he's done, I think that's a quirk of

4    the law that needs to be looked at as well.

5         As far as the need to deter his criminal conduct and

6    further crimes of the defendant, Judge, when he gets out, best

7    case, if you go with the 4 years we're asking for, he's going

8    to be 65 years old.

9         I would like to think that his days of crime are going to

10   be over by then.  He's already spent a year in the Logan

11   County jail.  And he's going to talk to you about this as well

12   when he has an opportunity.

13        But cases, in general, I approach how much time is

14   enough.  And that's a hard decision.  And that's a decision I

15   don't have to make.  That's ultimately up to the Court, but

16   that's a hard decision to make.

17        How do you balance how long you take somebody from

18   society and from their family and from their work -- how long

19   is that going to take for them to get the message not to

20   commit a crime and to protect society versus, you know, when

21   do we want to let them back out?  And I think in this case a

22   term of 4 years is that proper balance there.

23        Medical care.  I think there was some dispute about that.

24   Mr. Billings is going to tell you, I mean, he -- the Court --

25   I don't know if you remember him when he was here over a year

1   ago on November 12th, 2015, he was a rather large guy and he

2   was walking around on his own.

3        As I said, he's been in jail for a year.  Prior to his

4   change of plea, he had a heart attack and had to go into the

5   hospital for treatment there.

6        Mr. Billings tells me he has not received medical care

7   while he's been in Logan County.  And, in fact, we're going to

8   ask the Court to order or request that he be sent to a Bureau

9   of Prisons facility that has a rehab facility where they can

10  see if they can get him back up and walking and being able to

11  at least function again.

12       The other wild card in this, Judge, is the need to avoid

13  unwarranted sentencing disparities.  And I alluded to that in

14  my memorandum.

15       As far as I can tell from the pecking order here, I think

16  Mr. Pierce and Mr. Billings are the only two out of this

17  investigation that have actually been charged.

18       The Court has seen Mr. Pierce.  Unlike Mr. Billings, who

19  the Court ordered into custody last year, Mr. Pierce continues

20  to remain out on bond.  I don't know what he's going to get.

21  He's pending sentencing before this Court.

22       I think that the parties would agree -- and I think the

23  Government would agree that, of the two of these, Mr. Pierce

24  is the more culpable.

25       Mr. Billings, as soon as the investigation started -- as

Transcript of Sentencing
December 21, 2016

1   soon as he became aware of the investigation -- the

2   investigation started long before he was arrested -- he told

3   law enforcement, he told the FBI, go search my office, search

4   my computers, you can look at anything you want.

5        He was available to assist, to provide information.  He

6   has done a lot.  That's contained in the Government's sealed

7   sentencing memorandum.  But he has accepted his responsibility

8   for this, and I would argue that he is less culpable than

9   Mr. Pierce.

10       Again, I would just ask that the Court take a look at all

11  that Mr. Billings has done.  And that's detailed -- the

12  highlights are detailed in the Government's sentencing

13  memorandum.

14       Unfortunately, none of it came to fruition, but there was

15  definitely a lot of effort put in on Mr. Billings' behalf.

16       Having said all that, Judge, we would ask for a 4-year

17  sentence.  Give Mr. Billings an opportunity to be punished for

18  what he's done, to receive any treatment he needs while he's

19  in prison, and allow him to be back out with his family.

20            THE COURT:  Very well.  Thank you, Mr. White.

21       Mr. Petermann.

22            MR. PETERMANN:  Your Honor, at the end of my

23  remarks, I'm going to ask to approach and have a conversation

24  with the Court and counsel off record.

25            THE COURT:  Very well.

Transcript of Sentencing
December 21, 2016

1           MR. PETERMANN:  There are some things I don't want

2    to discuss, but some that I will.

3           The victims here want this Court to look at all of the

4    history of Mr. Mike Billings.  Four years is not enough.  The

5    guidelines are 14 to 17 and a half years.

6           Your Honor, whatever you do here today, you are not

7    removing him from society.  By his actions, his convictions,

8    his plea of guilty, he's removed himself from society.

9           The defendant says that if what Mr. Billings did in Peru

10   was done in Oklahoma, that it would not be a crime; it would

11   just be morally reprehensible at best; or worse, a 60-year-old

12   man having sex with 16-year-olds.

13          Mr. White is wrong.  Title 18, 1591, is a child sex

14   trafficking law.  It's a felony offense.  It has a 10-year

15   minimum mandatory.

16          And I promise this Court and I assure Mr. White that if

17   Mr. Billings had done what he did in Peru here and we found

18   out about it, we would have charged him with Title 18, 1591,

19   because what Mr. White says is a 60-year-old having sex with a

20   16-year-old here is not a crime.

21          That might be true under State law, but what is ignored

22   here is that the sex that Mr. Billings had in Peru was not

23   consensual; it was commercial.  This man paid for sex with

24   cash or gifts, cheap little bottles of gifts that appealed to

25   these little jungle girls.

Transcript of Sentencing
December 21, 2016

1      Furthermore -- furthermore, commercial sex act is the

2  actus reus that he did in exchange for money and sex.  It's a

3  felony here.  It's not morally reprehensible only.  It is a

4  crime, whether it's done here or done there.  It's just a

5  different statute.  The application is the same.

6      He speaks in his sentencing memorandum of a loving wife

7  and children.  Well, they're victims too, Your Honor.  He's

8  made them that way.  By committing these crimes, he's

9  emotionally and physically abandoned them.

10      You're going to be able to -- and I know this Court has

11  reviewed the presentence report.  The only thing that was

12  objected to was paragraph 83, and this Court has resolved

13  that.  These are facts this Court is going to consider.

14      I am not going to repeat everything in this presentence

15  report.  I just want to make a few comments.

16      The victim, E.R., has asked, in discussions with myself,

17  that Mr. Billings get a sentence, the most he can get under

18  the law.  Now, I do not take that to mean the statutory

19  maximum of 20 years because, in my discussions with her, I

20  explained the sentencing guidelines.  I explained to her that

21  the sentencing guidelines, I believe, would show between 15

22  and 20 years.

23      Well, here, this Court has determined that the sentencing

24  guidelines are between 14 and 17 and a half.  And so, on

25  behalf of the victim, I am asking this Court, who's been

Transcript of Sentencing
December 21, 2016

1  notified —— and the Government is in compliance with the

2  Justice for All Act —— to apply what she believes in her mind

3  would be the most serious offense, which is a guideline

4  sentence for his crimes.

5       Not one victim.  There are three.

6       Your Honor, I would point out that over the course of the

7  last year I have been listening to the jail calls of Mr. Mike

8  Billings, and I'm having a hard time believing this man

9  sitting in this wheelchair.  If this room were to catch fire

10  and I were a betting man, he would be the first one on his

11  feet leaving it.

12       Sentence disparities.  Mr. White talked about sentencing

13  disparities, about Mr. Pierce and Mr. Billings.  They're the

14  only ones charged federally for these crimes.

15       They're one and the same.  The guideline range for

16  Mr. Pierce comes out the same guideline range that you found

17  for Mr. Billings.

18       And Mr. Pierce will have his day in Court.  He'll have an

19  opportunity to stand before you, as Mr. Billings has an

20  opportunity to stand, or sit, before you to be judged for what

21  he's done.

22       There is no need to worry about disparities here.  This

23  Court will have the same ability to sentence Mr. Pierce as it

24  does Mr. Billings.

25       The difference —— and there was a difference between the

1  two men.  The difference is that Mr. Pierce simply recorded

2  everything.  He had documents and pictures of all the

3  activities -- not all, but a lot of activities.

4      Mr. Billings was much more secretive.  He didn't document

5  these things.  And, in fact, the Government's case is

6  strengthened because of Mr. Pierce's documentation,

7  recordings, and the photographs.

8      Iquitos, Peru, is a jungle city in Peru.  You can only

9  access it by plane or boat.  It is along the Amazon River.  It

10 is a world-renowned child sex tourism site because, for

11 pennies on the dollar or pennies on the Euro, westerners can

12 have sex with Cebollas, or young girls.

13     Since February 2003, Mr. Billings has traveled to

14 Iquitos, Peru, 36 times.  Mr. Billings took advantage of that

15 environment, like many who went before him.  In his own words,

16 found in the presentence report, "You can live like a Roman

17 God on a budget in Iquitos, Peru."

18     Again, supported by the presentence report, he found

19 mothers who were willing to prostitute their 16-year-old twin

20 daughters to him, and he paid to have them.

21     Mr. Billings, the evidence of the Government also

22 recorded in the presentence report, told our confidential

23 source, both in recorded and unrecorded statements, that he

24 went to Iquitos, Peru, to partake of things he cannot do in

25 the United States.

Transcript of Sentencing
December 21, 2016

1        In other words, Judge, even Mr. Billings, at the time a

2   licensed attorney here in the State of Oklahoma -- he has

3   since voluntarily surrendered that license -- even

4   Mr. Billings, Your Honor, knew that what he was doing in Peru

5   would get him in trouble here, because it's a commercial sex

6   act, not just a sex act.

7        It's the exchange of money and gifts for sex with minors,

8   a crime here and a crime there, just different statutes.

9        Billings' associates and himself would pay -- this is his

10  own words.  This absolutely confirms it's a commercial sex

11  act.  He would pay 100 soles for complete sexual intercourse

12  with Peruvian girls.  Your Honor, 100 soles is $28.

13       They would pay $50 soles for oral sex from these young

14  girls.  Your Honor, that's $14.  Mr. Billings bragged he could

15  get oral sex from these girls for as cheap as 40 soles, just a

16  little over $10.

17       This is commercial sex.  This is engaging in pattern of

18  activities that needs to be punished.

19       Who is Mike Billings?  He's all the things I've just

20  described.  He's all the things that are in the presentence

21  report.  He's some of the things which Mr. White has said.

22  And, undoubtedly, he'll be some of the things that he'll say

23  in just a few moments to you.

24       He was, up until the time of his arrest, the owner of two

25  local strip clubs.  He's a lawyer of somewhat dubious

1    reputation.

2         Your Honor, he obstructed justice in this case twice, not

3    once.  He attempted to get a pretrial service officer, an

4    officer of this Court, to alter documents so that whenever he

5    would be released from prison, he could live in Sulphur,

6    Oklahoma, the homestead of the Billings family, which would be

7    in violation of the sexual offender registration that he would

8    otherwise be under.

9         The pretrial service officer obviously reported this,

10   rejected his solicitation.

11        He also attempted to procure false testimony in this

12   prosecution by offering to pay money to a Peruvian witness to

13   suggest that he never had sex with Peruvian minors.

14        Paragraph 33 of the presentence report makes reference to

15   a witness statement where Mr. Billings talks about struggles

16   of being infatuated with several of his own daughters'

17   friends, teenagers, Your Honor, here.  He is a sexual deviant.

18        Bumps along the road?  I don't think so, Your Honor.

19   Something broke in this man a long time ago, and the result is

20   what we have here.

21        I am asking Your Honor for a guideline sentence, and I

22   would ask to approach to speak of things in the memorandum.

23             THE COURT:  Very well.

24        Would counsel approach?

25        (The following proceedings were had at sidebar and are

1    sealed.)

2            THE COURT:  This part of the proceeding shall be

3    under seal.

4            THE REPORTER: ███████████

5            MR. PETERMANN: ████████████████████

6    ████████████████████████████████████████████

7    ████████████████████████████████████████████

8        ████████████████████████████████████████

9    ██████████████████████████████████████████

10   ██████████████████████████████████████████

11   ████████████████████████████████████████

12   ███████

13       ██████████████████████████████████████

14   ████████████████████████████████████████████

15   ████████████████████████████████████

16   ██████████████████████████████

17       ████████████████████████████████████████

18   ██████████████████████████████████████

19       ████████████████████████████████████████

20   ██████████████████████████████

21       ██████████████████████████████████

22   ██████████████████████████████████████████

23   ██████████████████████████████

24       ████████████████████████████████████

25   ████████████████████████████████████

REDACTED and SEALED BY COURT ORDER



REDACTED and SEALED BY COURT ORDER



REDACTED and SEALED BY COURT ORDER



1

2

3          THE COURT:

4          MR. WHITE:

5

6

7

8

9

10

11          MR. PETERMANN:

12

13

14          THE COURT:

15

16

17

18

19

20

21

22

23          MR. WHITE:

24          MR. PETERMANN:

25

REDACTED and SEALED BY COURT ORDER

```
 1        THE COURT:  ████████████████████████████████

 2  █████████████████████████████████████████████████

 3  ████████████████████████████████████

 4        (Sealed portion of the transcript concluded.)

 5        (The following proceedings were had in open court with

 6  all parties present.)

 7        MR. PETERMANN:  Your Honor, that is all I have at

 8  present.

 9        THE COURT:  Very well.

10     Mr. White, you're recognized.

11        MR. WHITE:  I would defer to Mr. Billings, Your

12  Honor, if you want to hear from him now.

13        THE COURT:  Very well.

14     Mr. Billings, you're recognized to make any statement

15  that you desire to make to the Court in mitigation of your

16  punishment.

17        THE DEFENDANT:  Your Honor, I admit that I did have

18  sex with that girl.  She -- Robert and Jeff were upstairs with

19  other girls.  She came -- she came to the restaurant where I

20  was -- where I was sitting and asked if I'd be interested.

21        And, of course, I -- you know, I should have said no, but

22  I -- I said yes.  I -- I did that.  I -- I don't -- I don't

23  deny that.

24        Your Honor, I'm -- I'm sorry for what I've done to the

25  victim.  I encouraged her.  I -- you know, by -- by paying her
```

Transcript of Sentencing
December 21, 2016

1  and going ahead and having relations with her, I -- I

2  encouraged her to go on that path, and I was wrong about that.

3      Your Honor, I also -- I've -- I've left my family in a

4  terrible lurch.  I should -- I should have just gone home to

5  them.  My wife, who's standing by me to this day; my children,

6  who -- who are suffering from my absence.

7      Your Honor, I shouldn't have done it.  I should have

8  stayed home.  I should have -- I should have taken the high

9  road.  I didn't.

10     Your Honor, I've -- there -- there's been something said

11  about my malingering, my -- my being in this wheelchair.

12     Your Honor, I -- since I was -- I got very sick while I

13  was in county jail.  I wasn't treated.  I ran a high fever.

14  Your Honor, I've lost over 100 pounds due to my sickness

15  and -- and this.

16     I've lost the use of my legs, which I'm trying to regain.

17  I'm -- I'm -- I'm doing exercises.  Another -- another

18  prisoner is helping me with -- you know, helping me to learn

19  how to walk again.

20     I'm -- I am asking that the Court recommend that I be

21  sent to a physical rehab facility in -- in the Bureau of

22  Prisons.

23     Your Honor, I don't deserve to just be set free.  I

24  deserve to be punished, but I don't deserve to have my life

25  taken away from me.  Your Honor, I'm -- I'm asking the Court

Transcript of Sentencing
December 21, 2016

1   to be merciful with me and still -- and still -- and still

2   punish me

3       When I was practicing law, I -- I ran -- I ran into some

4   people that would -- that would say, you know, when we're

5   trying to come up with a suitable sentence, we ask ourselves

6   two things:  Are we mad at this guy, are we afraid of this

7   guy?

8       I've done nothing to be afraid of.  I -- I've made some

9   terrible -- I've made some terrible choices.  I should have

10  stayed home, been with my family, been with my wife.  I

11  didn't.

12      The -- the Court, society, has a right to be mad at me

13  because I did wrong, but I'm not -- I'm not trying to

14  perpetrate any kind of fraud on the Court by sitting in this

15  wheelchair.

16      If I could get up and -- and walk out of here -- if

17  this -- if this room were on fire, I would -- and somebody

18  didn't rescue me, I'd sit -- I'd sit here and perish.  There

19  wouldn't be any way I could escape in time.

20      If the Court will allow me to have -- have some life

21  after my punishment, I'll return to my family, I'll -- I'll go

22  back to work, and I'll rehabilitate myself to not do this kind

23  of thing.  I'm going to -- I've surrendered my passport.  I

24  won't be traveling in this way again.

25      Your Honor, I'm -- I'm asking that the Court be merciful

Transcript of Sentencing
December 21, 2016

```
 1   with me.  I can't -- I can't just jump up and say, Your Honor,
 2   I deserve mercy because of this and this and this because I'm
 3   a wonderful guy.
 4       Your Honor, I wasn't a wonderful guy.  This -- this --
 5   this girl came to me, she offered -- you know, she offered to
 6   have sex with me for money.  And I -- and I said fine, knowing
 7   that I had a wife at home waiting for me, knowing that I had
 8   my children at home waiting for me.  I shouldn't have done it,
 9   but I did.
10       I'd ask the Court to be merciful.
11       Have I forgot anything?
12           MR. WHITE:  (Shakes head).
13           MR. PETERMANN:  Your Honor, may I briefly respond?
14           THE COURT:  Yes, you may.  Thank you.  And I'll give
15   Mr. White the last words.
16           MR. PETERMANN:  Thank you, Your Honor.
17           THE COURT:  Thank you, also, Mr. Billings.
18           MR. PETERMANN:  The presentence report, not objected
19   to, E.R., the 16-year-old he says he had sex with one time, is
20   contrary to the facts which are here.
21       He doesn't even mention the mother that prostituted her
22   16-year-old twins to him.  He doesn't mention that E.R. comes
23   to him initially not to have sex, but to ask, from the rich
24   American, 150 soles to buy medicine for her sick mother.
25       In the PSR, not objected to, is the defendant's response.
```

1   "If you will have oral sex with me to ejaculation, I'll give

2   you the money for your sick mother.  Otherwise, I won't."

3        She did it.  He paid her.

4        In his petition for plea, he talks about one time doing

5   it with E.R.  He doesn't talk about the other victims.  He's

6   minimizing as he sits here today the same way he's minimizing

7   his physical capabilities.

8        Should have stayed home with his family?

9        Which time in the 36 times he went down to have sex

10  outside the bonds of his marriage and outside the bonds of his

11  family relationship did it dawn on him, Your Honor, that he

12  should have stayed home with his family?

13       If Mr. Billings had -- I know the reputation of the

14  Marshals.  I know Logan County.  This Court does too.

15  Mr. Billings is a former lawyer.  He passed the Bar.  At some

16  point he's able to argue and advocate for others and himself.

17       He would have gotten medical treatment.  I think the fact

18  that he didn't get medical treatment is because the staff

19  doesn't believe he has the problems he perpetuates to the

20  Court today.

21       He had sex with multiple people, not one.  I'd ask the

22  Court to consider that and apply a guideline sentence.

23            THE COURT:  Mr. White, finally.

24            MR. WHITE:  Judge, there's been a lot made about

25  Mr. Billings' condition.  I think, you know, the Government

1    can speculate on what it is.  Mr. Billings is telling you how

2    it is.

3         And Mr. Billings would tell the Court that he asked for

4    treatment when he was in Logan County and was told that he

5    would get it at BOP when he got into the system.

6         All that aside, Judge, I would just go back and ask the

7    Court the question that I asked:  How much is enough?

8         This is not an easy case to sentence, but I think a

9    sentence of 4 years is adequate given the considerations the

10   Court has to make statutorily and within the Court's own mind

11   to establish a level of justice for what has happened in this

12   case.  And that's what we'd ask for.

13        That's all I have, Judge.

14            THE COURT:  Very well.  Thank you.

15        Is that --

16            MR. WHITE:  That's it, yes, ma'am.

17            THE COURT:  Could you approach, please?

18        Just stand at ease a moment, Counsel.

19        (Court has off-the-record discussion with law clerk.)

20            THE COURT:  The Court, before it announces the

21   sentence in this case, would like to just highlight a few

22   things which certainly are part and parcel of the Court's

23   decision in this matter.

24        It was noted, certainly in the presentence report, that

25   Mr. Billings had been traveling to foreign countries to have

1  sex with minors for at least a decade.

2      There's other investigative material that indicates that

3  the defendant introduced others to this practice, including

4  one of his very good friends, Mr. Pierce.

5      The report also reflects that the defendant's routine

6  presence in Iquitos, Peru, allowed him to groom young girls.

7  And then, on subsequent trips, the defendant, the report

8  cites, would attempt to engage in sexual activity with the

9  girls.

10      The report further discussed how the defendant took

11  advantage of families struggling in a country with an

12  incredible high poverty rate.

13      And although the discovery in this case represents only a

14  snapshot of victims the defendant was currently manipulating,

15  it would be probably close to impossible to know the true

16  extent of his victimization of young girls.

17      His manipulation also extended into other areas of his

18  life.  And the pretrial records, as stated in the report,

19  reflect that when the defendant was on pretrial release, he

20  was constantly pushing the limits with his supervising

21  officer.

22      As noted in the presentence and investigation report, the

23  defendant bragged about escaping liability for committing a

24  violent felony in Logan County District Court.  And for these

25  and many more reasons, it appears that a lengthy term of

1   incarceration in this case is warranted.

2          Therefore, it will be the judgment of the Court that the

3   defendant, Mr. Michael Dean Billings, be committed to the

4   custody of the Bureau of Prisons for a term of 168 months.

5          Due to the defendant's inability to pay a fine, the Court

6   will waive any fine in this case.

7          It's recommended that the defendant participate in the

8   Federal Bureau of Prisons' Inmate Financial Responsibility

9   Program while incarcerated in the Bureau of Prisons.

10          Upon release from imprisonment, the defendant shall be

11   placed on supervised release for a term of at least 5 years.

12          Within 72 hours of release from custody, the defendant

13   shall report in person to the probation office in the district

14   to which the defendant is released.

15          The defendant shall comply with the standard conditions

16   of supervision adopted by this Court and shall not possess a

17   firearm or other destructive device, and shall cooperate in

18   the collection of DNA as directed by law.

19          This Court is not imposing any period of community

20   service in this case.

21          The defendant shall submit to a sex offender mental

22   health assessment and a program of sex offender mental health

23   treatment as directed by the U.S. probation officer until such

24   time as the defendant is released from the program by the

25   probation officer.

Transcript of Sentencing
December 21, 2016

1      This assessment and treatment may include a polygraph to

2  assist in planning and case monitoring.

3      The defendant may be required to contribute to the cost

4  of services rendered in the form of a copayment in an amount

5  to be determined by the probation officer based on the

6  defendant's ability to pay.

7      Any refusal to submit to such assessment or test as

8  scheduled is a violation of the conditions of supervision.

9      The defendant shall waive all rights to confidentiality

10 regarding sex offender mental health treatment in order to

11 allow release of information to the supervising probation

12 officer and to authorize open communication between the

13 probation officer and the treatment provider.

14      The defendant shall not be associated with children under

15 the age of 18 except in the presence of a responsible adult

16 who is aware of the defendant's background and current events

17 and who has been approved by the U.S. Probation Officer.

18      The defendant shall register pursuant to the provisions

19 of the Sex Offender Registration and Notification Act or any

20 applicable state registration law.

21      The defendant shall submit his person and any property,

22 house, residence, vehicle, papers, computer, other electronic

23 communication or data storage devices or media and effects to

24 search at any time with or without a warrant by any law

25 enforcement or probation officer with reasonable suspicion

1    concerning a violation of a condition of probation or unlawful

2    conduct by the person and by any probation officer in the

3    lawful discharge of the officer's supervision functions.

4        The defendant shall consent to the U.S. probation officer

5    conducting periodic unannounced examinations without

6    individual showing of reasonable suspicion on any computer

7    equipment used by the defendant.

8        The examination may include assistance of other law

9    enforcement agencies.  This may include retrieval and copying

10   of all data from the computer and any internal or external

11   peripherals to ensure compliance with his conditions and/or

12   removal of such equipment for the purpose of conducting a more

13   thorough inspection and allow, at the direction of the

14   probation officer, installation on the defendant's computer at

15   the defendant's expense per copayment policy any hardware or

16   software systems to monitor the defendant's computer use.

17       The defendant shall comply with the computer monitoring

18   and acceptable use contract which includes a requirement that

19   the defendant use a computer compatible with available

20   monitoring systems.

21       The defendant shall have no expectation of privacy

22   regarding computer use or information stored on the computer.

23       The defendant shall warn any other significant third

24   parties that the computers may be subject to monitoring.

25       Any attempt to circumvent monitoring and examination may

Transcript of Sentencing
December 21, 2016

1   be grounds for revocation.

2       Defendant shall have no contact, directly or indirectly,

3   with any and all victims of the offense.

4       The defendant must submit to a search of his person,

5   property, electronic devices, or any automobile under his

6   control to be conducted in a reasonable manner and at a

7   reasonable time for the purpose of detecting evidence of sex

8   trafficking activities at the direction of the probation

9   officer upon reasonable suspicion.

10      Further, the defendant must inform any residents that the

11  premises may be subject to a search.

12      The defendant shall pay to the United States a special

13  assessment of $100, which shall be due immediately.

14      The defendant is further advised that, pursuant to the

15  plea agreement, the defendant has waived his right to appeal

16  or to collaterally challenge the sentence imposed by the Court

17  except under limited circumstances.

18      To the extent that the right of appeal survives this

19  waiver, the defendant is advised that the appeal -- his appeal

20  in this instance is to the United States Court of Appeals for

21  the Tenth Circuit.

22      And that if the defendant cannot pay the cost of appeal,

23  the defendant may apply for leave to appeal in forma pauperis;

24  that is, without payment of cost for the transcript of the

25  trial record and for an attorney at Government expense.

Transcript of Sentencing
December 21, 2016

1    Notice of appeal must be filed with the clerk of this
2    Court within 14 calendar days or the defendant may request the
3    same of record.
4        Mr. White, I know earlier you mentioned a facility or a
5    particular type of facility that you would request that
6    Mr. Billings be housed in.
7            MR. WHITE:  Yes, ma'am, a facility that had a
8    physical rehab program available.
9            THE COURT:  Okay.  And that should be sufficient to
10   cover, that statement?
11           MR. WHITE:  Yes, ma'am.
12           THE COURT:  Certainly -- you know this, Mr. White,
13   and to the family of Mr. Billings -- the Court cannot
14   guarantee where Mr. Billings' place of incarceration will be
15   to serve that time.
16       But when the documents are prepared concerning these
17   proceedings, the request will be made for a facility which
18   houses a physical rehabilitation type of activity for those
19   people in that particular facility.
20       And do you want to say "closest to the state of Oklahoma"
21   or just wherever it is?
22           MR. WHITE:  Any available, Judge.
23           THE COURT:  Very well.  So it will be just that, the
24   physical rehabilitation language.
25       Mr. White, is there anything further on behalf of

Transcript of Sentencing
December 21, 2016

1    Mr. Billings?

2               MR. WHITE:  No, ma'am.

3               THE COURT:  Mr. Peter -- counsel for the government,

4    Mr. Petermann, anything further on behalf of --

5               MR. PETERMANN:  Your Honor, in agreement with the

6    plea agreement that we have with the defendant, we would move

7    to dismiss the indictments, since he pled guilty to a

8    Superseding Information, provide an order for the Court, and

9    ask the Court execute it.

10              THE COURT:  Very well.  So you're going to

11   subsequently provide the actual --

12              MR. PETERMANN:  You have that order.

13              THE COURT:  Oh, I have it already?

14       Here it is.  I'm sorry.  Pardon me, Mr. Petermann.

15              MR. PETERMANN:  Thank you, Your Honor.

16              THE COURT:  The Court has entered its order of

17   dismissal of the counts represented by Mr. Petermann.

18       Let me check one thing.

19       Do either counsel know, without me flipping through every

20   page of the presentence report, what the period of supervised

21   release is?  I think I said --

22              MR. WHITE:  You said not less than 5 years.

23              THE COURT:  -- not less than 5.

24              MR. PETERMANN:  It has to be at least 5 years, Your

25   Honor.

1          THE COURT:  The Court will make it, affirmatively, 5

2   years on supervised release.

3       Anything further from either attorney?

4          MR. WHITE:  No, ma'am.

5          MR. PETERMANN:  No, Your Honor.

6          THE COURT:  Very well.

7       If there's nothing further, Mr. Billings, the Court is

8   going to return you to the custody of the United States

9   Marshals.  The two gentlemen who are seated there in the

10  chairs will escort you out.

11      And the best to you and your family.

12          THE DEFENDANT:  Thank you, Your Honor.

13          THE COURT:  Very well.  This Court will be in

14  recess.

15      (Adjourned at 11:20 a.m.)

16

17

18

19

20

21

22

23

24

25

Transcript of Sentencing
December 21, 2016

1                    REPORTER'S CERTIFICATE

2

3          I, SHERRI GRUBBS, Federal Official Court Reporter in

4    and for the United States District Court for the Western

5    District of Oklahoma, do hereby certify that pursuant to

6    Section 753, Title 28, United States Code that the foregoing

7    is a true and correct transcript of the stenographically

8    reported proceedings held in the above-entitled matter and

9    that the transcript page format is in conformance with the

10   regulations of the Judicial Conference of the United States.

11

12          Dated this 22nd day of March, 2017.

13

14          /S/ SHERRI GRUBBS_____

15          SHERRI GRUBBS, RPR, RMR, RDR, CRR
            State of Oklahoma CSR No. 1232.
16          Federal Official Court Reporter

17

18

19

20

21

22

23

24

25